The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oye, Oye, Oye. All persons having any manner or form of business before the Honorable of the United States Court of Appeals for the Fourth Circuit are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Good morning everybody, please be seated. Welcome to the United States Court of Appeals for the Fourth Circuit. We have two cases on for hearing this morning. First is 25-1128, Public Interest Legal Foundation v. Knapp. Ms. Green, or Mr. Green, sorry. Whenever you're ready. Thank you, Your Honor. Good morning, may it please the Court. My name is Tracy Green, I'm representing the appellate, which I'll refer to as the commission or the election commission. I would note that on the caption, Howard Knapp is listed as the executive director. That actually now is Jenny Wooten, who is the interim executive director of the commission, which was a recent change. I would note that for the record, but we can also send a letter to the court, to the clerk, if the court would prefer on that point. The underlying issue in this appeal is whether Section 8I of the NVRA, the National Voter Registration Act, entitles this foundation as a non-South Carolina voter to receive a list of South Carolina voters. The state statute limits restriction only to South Carolina registered voters. The district court ruled that the foundation is entitled to the voter list and that that state statute is preempted by Section 8I of the NVRA. I'll refer to it with that acronym. The commission respectfully submits that the district court erred, but on appeal, the commission further raises the issue that the foundation did not have standing to present that claim and therefore the case should be dismissed because they do not have standing. I'll address the standing issues first, followed by the remaining substantive issues, and will rely on my brief for any issues that I don't reach today. So the district court didn't reach the standing issues? The district court did not reach the standing issues. Is that the summary judgment stage? That is correct. We were at the summary judgment stage. We filed cross motions for summary judgment. We didn't press the standing in part of our summary judgment at that level. We did raise it in our complaint, both as response answers to their allegations. You don't have much of a choice when you're talking standing. We have to look at that. The court does have to look at it. The court always has to ensure itself of its jurisdiction. I just want to be clear, we did not press it beyond the pleadings or beyond our responses to allegations at that stage. Is that because you thought that the foundation had standing? We have evaluated it differently at different times, I would say, Your Honor. We started briefing this case before Hippocratic Medicine came out. We went back and looked at things after Hippocratic Medicine. As you noted in the Republican Party case, Hippocratic Medicine seems to really tighten things up on organizations. So we took another look at it and thought we decided to raise the allegation and push it more. The long story short is I think Hippocratic Medicine sort of focused us in on what needed to be done. We decided we didn't think they'd cross that threshold. I'm really interested in the procedural posture of the case. Because if nothing was done in the district court and all we have is a complaint, and I don't think the complaint is verified, is it? It is not a verified complaint, no, Your Honor. There's a verified complaint and there's an answer. There were stipulations of fact filed and agreed upon stipulations of fact filed. Most of these cases we see come on a 12B6 dismissal or a question on standing. But when you get the summary judgment, I'm wondering what can we do with it? Do we just send it back and say consider standing? Or what if you never raised it? I mean, what if nobody picked up on it? It's confusing at this point that it comes to us after a summary judgment. If it was 12B6, it would be something different. We can look at the complaint, the allegations, that sort of thing. But the case law is pretty explicit that when it gets to summary judgment, you have to have some evidence, affidavit or something there to support it. And there's nothing in the record. So what do we do with this thing? There's nothing to support it. We understand that. We would submit that under... But now practicality. Practicality. If we send it back, I would think, I know the Third Circuit has felt differently than others, but they probably could find, you know, something to get at least for the informational injury. And then you've got the greater questions on this downstream stuff. We may have a conflict here. There are a lot of little small issues in this case. It really doesn't go to the merits. At the end of the day, if they're able to establish a standard, that's a pretty strong case. But go ahead. I just want to... We can talk all day long about all this other stuff, but those procedural issues and the issues are right there in front of us. And what do we do with it? I mean, do we now listen to you for the next 20 minutes, just go on and on, knowing at the end of the day, there's really no... If we do address standing, there's no evidence at this point. So what can we do other than send it back? Your Honor, I would submit that you can... It is their burden to prove standing at the complaint stage. Their allegations do not get them across that threshold. And nothing else that was done either by affidavit... Again, I'm not... I don't want to over-represent what we did. Evidence is what I'm saying at summary judgment. So that's understood. Right. But it just seems like something is missing that it just comes to us now because they could have done these things. Nobody brought it up. No, sir. Nobody brought it up. I don't want to over-represent that. But I do think the standing has to exist at the time the complaint is filed. Their allegations we submit are not enough to get them across that threshold. And there was nothing else that was introduced or adduced either in the stipulations or otherwise in the arguments that would give them... As an allegation, it's not anything that can get them across. It's not just the not enough. It's not evidence. The complaint was verified, then we could treat it as evidence. But it's not evidence. So that's my point. You say not enough. We can keep talking about what the allegations are all day long, but the question is, is it evidence to support a determination of standing at summary judgment or do we look back at the 12B6? I think on this point you would look back at the 12B6 because it's their burden to get into court. And they did not allege enough. And I would add one thing to that, Your Honor. You could consider, I think, as part of the arguments and discussions, they conceded that they could get the voter list otherwise. I think that would go to their injury, in fact, and the concreteness of it. So I think there are things that you can consider as part of that process. We do have case law, cases in which the issue of standing was raised for the first time on appeal and we sent it back in a summary judgment context. We sent it back for jurisdictional discovery. Would you have an objection to our doing that? I would prefer not to, Your Honor. My argument would be that you can't hear. It's their burden to get in on the complaint level to allege facts that would support a standing argument. We submit that under the precedent that we cited in our brief, they've not done that. But candidly, that is an option for the court. I can't deny that. It would just be our preference not to. Thank you, Your Honor. I do want to touch briefly on the standing issues, if I may, before I proceed to the substantive. I mean, putting aside what I understand Judge Wynn's points and putting aside that, I think there's a question about what analysis should be applied here and we would submit that it's along the lines of the Spokio, Dreer, TransUnion, and Hippocratic Oath cases. The foundation has contended that Loffer affords it standing just by virtue of the fact it is alleged an informational injury. We submit that that is not the allegation or that is not the analysis that should be applied here because TransUnion held that it asserted informational injury that causes no adverse effects, cannot satisfy Article III. I think Dreer anticipated or presupposed or got TransUnion right a long time ahead and so, therefore, because there's no common law analog for a statutory informational injury, the foundation has to show it suffered a real world harm and we submit that they've not done that here. That issue is not as straightforward with us because I think there's a conflict in our law on this downstream consequences. It arises from that Loffer case and early treatment of drive and TransUnion, the interpretation of it, the whole bit, and the question is, is that a part of the analysis, the downstream consequences? It's not straightforward to us at this point because we do, I mean, Loffer and I tried to reconcile it with the other one. It's spot on in saying, you know, the conflict is spot on. I mean, it's right there. Those two cases conflict. Loffer and Dreer?  Yes, Your Honor. No question. No. But the later one we have is Loffer, but typically on these we look at the earlier one and it may have some consequences here because we don't have that information of the downstream consequences. Yes, Your Honor. I would submit, no, I have struggled to come up with an easy reconciliation of the two cases and I have not been able to do something like that. But what I would say is that I think Dreer applies here for several reasons beyond the fact that it was the first one decided. I think after Hippocratic Medicine, you have to look at what the organization has alleged. They can't allege just diversion of resources. That's not enough because they can't just kind of, sort of what Hippocratic Medicine says and what some of the other decisions say. They can't just go around looking for causes of actions to sue the government for to complain about something they've done. I think the organizational standing here is their problem. Diversion of resources doesn't work for the same reason,  Hippocratic Medicine has tightened that up, I think, pretty substantially. And they don't have, essentially their allegations are put aside the diversion of resources. They're going to talk to somebody somewhere sometime about the voter list or about voting things in general. We submit that's not concrete enough and that's not specific enough. I'm sorry to interrupt, but isn't that the reason why they exist? I mean, it's the whole purpose of the foundation is to engage in that kind of activity. So why isn't it reasonable for us to assume that that is likely to happen, that kind of interaction with voters? Because I don't think that's what Spokio or Dreer or TransUnion talk about. It has to be specific, concrete allegations. And I would add to this, I think Twombly and Iqbal require more specific factual allegations than just we'll use this information somehow. It's got to be more specific about what they'll do with it. I would say... You know, I guess it just seems odd that a state elector, I guess it's not a citizen, but it would be a state elector that would have access to this information or all South Carolina? State elector. Somebody who can vote. Okay, right. So just as a general principle, someone who can vote would have access, but an organization that's committed to ensuring the integrity of the electoral process can't have access? That's correct. Does that make sense to you? I think it does, Your Honor, because it's really... It ties more into the focus of the statute, which is providing information. And frankly, to voters, about whether their registrations have been properly handled and the like. And the people who are interested in that are South Carolina voters. So to tie that back into a standing analysis, and I think the Third and the Sixth Circuits in the decisions we've cited in our brief thought that significant, that the foundation is not part of those states because they're not helping a voter in those states. There's nothing there. I think that would distinguish this too a little bit from the Republican Party case against the North Carolina board. That's in North Carolina doing North Carolina things. And that's... There's a specific injury there. Here, there's no specific injury for any South Carolina person. Wouldn't your theory then preclude standing in every FOIA case? I would distinguish... I would distinguish a general information... Let me make two responses to that. I don't know under the current law what the status of it is for a pure informational statute like FOIA. I don't think this is a FOIA type statute because it is part of Section 8. Only part of Section 8 of the entire National Voting Rights Act. So it's just targeting Section 8 activities. It provides for disclosure of information. It does. It's one part of it. It's not the whole part of it. Is that the difference? It is not the whole part. It might be different... It doesn't seem to go to Article 3 standing. Your Honor, that's, I think, a position. It might be different if it were its own stand-alone statute, Section 15, within the NVRA. But it's not. Why, from a constitutional standpoint, would that be different? I think because TransUnion, Dreer, Spokane, you have to look at the type of harm that Congress intended. They can't... They can create causes of action and the like, but there's still got to be an Article 3 injury to get into court. And it's got to... If there's not a traditional remedy at common law, it's got to be tied to the... It's got to be tied to the harm that Congress sought to remedy. Now, maybe there's nothing to do with the foundation talking or giving out information. It's not like they're doing something like Project Vote where there are specific voters. There were questions about their voting, or registrations, excuse me, and their activities were targeted to that. That was concrete and specific. That is not what we have here. It's just generalized allegation. Frankly, a generalized grievance that would be shared with any non-South Carolina citizen. It would be like somebody in Alaska wanting to talk to their neighbor about South Carolina's voter list. That's not enough. We don't submit. I will rely on... If there are other questions, I will rely on my brief and respond to anything in rebuttal. Thank you, Mr. Green. Thank you very much. Ms. Valdez. Good morning. My name is Carolyn Valdez and I represent the Public Interest Legal Foundation in this case. Mr. Chief Judge, and may it please the Court. The South Carolina Election Commission asks this Court to revisit issues already resolved by Congress and already decided by both this Court in Project Vote v. Long and the Supreme Court in Arizona v. Inter-Tribal Council of Arizona. The NVRA includes a broad public disclosure provision that requires states make available for public inspection. What about the standing issue? The standing issue is, quite frankly, not an issue in this case. To address some of your questions about the conflict between... You don't mean not an issue from the perspective that we have to determine if they're standing here. Yes. Even if the District Court didn't consider it, we have to assure they were standing. Yes. I meant only that it's not an issue because the Foundation does have standing. And you had a summary judgment stage and you have evidence that you submitted that would support this? Yes. What is the evidence? We have stipulated to all the facts necessary to resolve the standing issue. Stipulation doesn't address injuries. You can address a lot of things in it, but there aren't specific injuries necessary to establish standing. In your stipulation, I looked at it very carefully because I'm trying to find it too. I'm just thinking it's a matter of practicality. It'd be nice to be able to do it. I'm wondering, can we do it at summary judgment? Your complaint is not verified. The stipulation doesn't include information about injuries. It has a lot of other things in it. So, I mean, what do we do with it? I mean, it's problematic when a case comes to us like this. It looks like it could be a delay, but I don't know how we avoid it. Well, because this is an informational injury, all that's required to establish standing is that the plaintiff failed to obtain information that must be publicly disclosed pursuant to a statute. So, there don't need to be downstream consequences shown? No, not under this circuit's precedent in Laufer as well as the Supreme Court's precedent in Public Citizen and Aikens. Laufer conflicted with an earlier case we had that said it did require the trial case. It's all important. It says it. And I grant you, Laufer says it too. I don't know what to do with it. And then you got TransUnion, which, you know, one could look at that and say that's true too. I think it's something, I don't know if we can resolve it as a panel because we can't conflict with the earlier panel on it, but that was true of Laufer. He could not conflict with the earlier case too. I don't know how you distinguish the two cases. The injuries in those cases are distinct. So, in Dreher, the injury was inaccurate information, which is more in line with the Spokio line of decisions. Laufer, on the other hand, was a failure to obtain information required to be publicly disclosed pursuant to a statute. And that's the injury that we have in this case. So, it's completely different injuries. And so, the cases don't conflict. And I would urge this Court to follow up on that. So, we're not bound by other circuit precedent, but you made those arguments in at least two circuits that I'm aware of and they rejected them. Why were they wrong? They were wrong because they misapplied TransUnion. And this circuit applied it correctly. This circuit in Laufer talked about how TransUnion distinguished public citizen and Aikens. It did not overrule them or call into question their holdings. And public citizen and Aikens definitively hold that all that is required for an informational injury is a denial of information required to be made public by statute. Let's say we disagree with you and think that our earlier precedent, as well as the Third and Sixth Circuit analyses of the law is correct. And that is, you need something more than simply informational injury. Is there something more in this record that you can point to? I can only point to the stipulated facts. And again, I would just urge that... But do you think that's enough? And if so, tell me why you think that's enough to satisfy that slightly, well, I guess more significant burden. I would say that to your point, this is an organization dedicated to protecting election integrity. And using this information is right in line with what this foundation does. I think to the extent this court would like more information, we are happy to supplement. But again, I would just point to... I guess I don't know that we can supplement on appeal. I guess the case would have to go back for jurisdictional discovery. But I know you don't want that. But... I'll ask you again. Do you think there's enough in this record to satisfy that stricter burden? And if so, point to me where that information is. I'm not... I'm not sure I can say that it satisfies the stricter burden. But I would just reaffirm that that stricter burden is not what applies in this case. I understand that. You've had other cases like this. And the issue of standing. You've addressed that in other cases. I'm just wondering when it goes to the district court, did it occur to you that standing would come up on appeal? I mean, the burden is for you to establish standing. But... As I see it, nothing was said to the district court about it. And it would seem to me, you would say to the district court, well, Your Honor, I'm sure we have standing. Here's an affidavit. Well, we can take the complaint and we can verify it or whatever is necessary. And that is evident. That would be some evidence in the record. But I don't see anything in those stipulations that... Tell me what in that stipulation addresses injuries. Well, again, I would point to the injury is the denial of the information that must be made public pursuant to a statute. And based on that injury, the foundation doesn't need to allege anymore or provide affidavits. In other words, per se, you get standing as a matter of course based upon the statute is your opinion. Yes, because that's what Congress decided. But if you take the position that Judge Diaz just articulated, you don't get it in that instance if you have to show some downstream consequences or something of that nature based upon the early case from this court and maybe interpretation of transunion by other circuits and perhaps our interpretation. Right? I mean, you don't get it with just that naked statement that is information that we should get. Under the theory that downstream consequences are required, no. But even evidentially with that, I'm just thinking in terms of evidence, you still have to have specific evidence without downstream. And there's no specific evidence that's being offered. I know it's painful to say these kind of things, but I I'm sort of troubled by the fact that you're not new to these cases. You've had them before. You had to know standing is an issue in these cases and yet the district court didn't address it. Nobody brought it up and then you come to us and now we're talking standing. And that's not I know you like to supplement evidence and stuff. We don't make those findings here. In fact, we pretty much as a blanket, we don't do that. We send it back to the district court and I realize the timing of it is troubling to me because I'm not sure the outcome is going to be any different if you do one way or the other. But okay, well, I think it's frustrating at this point. And as I said, we can talk on and on but that issue is right there in front of us. And I don't know what we do with it. I don't know how we resolve it. I would just still point to the fact that we did stipulate to the evidence that is necessary to make a finding on standing in this case. What is that evidence that you stipulated to? That we were denied the voter list, which is the information that Congress made public pursuant to statute. You were denied the voter list but what is the injury? That is the injury. That's the informational injury. Just like it was in Aikens, Public Citizen, and Laufer. All that's required is the denial of the injury itself because Congress made that information available to the public. That goes back to TransUnion and what we I think I see where you're going with it. It's not as clear to us as I would like it to be. In your complaint, you do have several allegations in your unverified complaint about I think what could constitute if there were facts to support the allegations could constitute potentially downstream injury if we were to find that that was necessary or if that was what the case law demanded. For example, several paragraphs you talk about the organization providing policy advice, legislative guidance in South Carolina, specifically aiding South Carolina in carrying out list maintenance, maintaining institutional knowledge. You do have allegations and so I would assume that an opportunity to provide some evidence to support those allegations would be welcome. Yes, absolutely. If this court were to find that downstream consequences are required, we no doubt have downstream consequences from the denial of the information and would be happy to compile affidavits to that effect. You mentioned a number of cases but you didn't the most recent case from the Supreme Court I think to speak on this issue is the Hippocratic Medicine case which was after all the cases you were talking about. So what do we do with the requirement there that seems to require downstream consequences? Well again, that case involved a completely different injury. In fact, the Supreme Court said the associations have not claimed an informational injury and that is what we're claiming in this case. So I think it's a completely different set of facts, a different injury in that case. I would also point to what you had mentioned earlier, Judge Berner, about how you were asking if FOIA is distinguishable from this and I would argue it's not. In fact, the Supreme Court in Public Citizen used FOIA as an example where there is a pure informational injury just by nature of not receiving information that Congress made public. And in Public Citizen, the statute at issue was not a general public disclosure statute. It was a part of a statute similar to how the NBRA, the public disclosure provision, is a part of a whole. So it's really not distinguishable from the FOIA context, this theory of this informational injury. And to the Commission's argument that potentially part of the injury is that we could get the information another way, federal rights do not exist by proxy and so that should not impact the standing analysis in this case. I think related to that, the Commission is arguing that not only could you get the information in a different way, but that the statutes are directed at protecting South Carolina voters and information related to South Carolina voters and you are sort of an interloper coming in from the outside to gather information that really is none of your business. And I hate to be that blunt, but how do you respond to that? I would argue it is the Foundation's business. I mean, this is an organization dedicated to protecting the election integrity and the Foundation does that by analyzing state voter lists for missing information, duplicates, and the Foundation is able to present that information to the states, which allows the states to take that information and better protect their own constituents. I would also argue that South Carolina's statute does not protect a whole group of people that would be interested in this information and that is South Carolina voters or South Carolina citizens whose voter applications were rejected. Under the South Carolina statute, those citizens would not be able to request the list and inspect it for widespread rejection processes that might not be in line with the Constitution and those people do have a vested interest. So this case goes beyond just the Foundation. This is an exercise in good governments for states and transparency and accountability that is crucial to the functioning of this democracy. It is an interesting point, though, that South Carolina would want one of its citizens who's registered to be a party to it when there's someone who's outside and not in South Carolina's interest at all. They're looking to comb through the records and there may be nuances that an elected person may want to be involved in it and when you think about state rights, federal rights, which we used to talk about a lot. It seems like now we talk about most of the federal rights and life is going in a different direction, but when you think about that, the state of South Carolina wants to have this list. You just need to get one of our voters, registered voters, probably got a million or more millions there. Don't take one of them. And I don't know how much they got to be involved in it, maybe, or your organization is not a membership organization, is it? No, it is not. But you have constituents, I guess. You have some... It's an organization in which I'm just wondering how difficult it will be to get a line of registered voters to get the list. I mean, with millions out there, probably sharing your same aim, your same views, everything. And I'm wondering, even if you had one of your directors or someone who was a South Carolina one, you could just temporarily vote them up there, I guess. And say, there's a member, we got a member, this member is a South Carolina person. I'm not sure that would work. But it just seems so simple that if you really want this list, you can get it. But you don't want to have to go through... You don't like this law that says, I got to do it with a registered voter. Well, federal rights don't exist by proxy. And so the fact that we could have access to the list through other means is not relevant to the issue at hand. And I would also point to... But it does mean you can get the list. And that's what Congress wanted you to say. You can get this list. South Carolina adds a restriction on it. I mean, another restriction got on it. Congress didn't say, you got to pay for that list. South Carolina makes you pay for it. I guess you're not challenging that aspect of it. So it's a degree of restriction that maybe you can't get it. Even though the statute says you must get it. But they say, no, you'll give me $2,500. It seems like it's kind of the same thing. They say, no, you got to get one of our voters to be part of this deal here. And there are millions you can select from. And you haven't shown any indication you can't get one of those millions to do it. I would argue the residency requirement is not the same thing as a fee. And that is because the residency requirement that South Carolina has poses an obstacle to Congress's intent in enacting the NBRA. Congress intended... The issue here really isn't a federal right. The issue is Article III standing, which Congress can't create. So I don't think the question is whether there's a violation of a right. The question is whether you can bring this case to federal court. I'm wondering if you can address the decision from this court from almost exactly a year ago today in the RNC case where standing was found. Is that case ... Is there anything there? Are you alleging facts similar to that case? I think we are alleging facts similar to that case. And I think the standing issue in this case is really more simple than is being presented today. I would just go back to the fact that TransUnion did not overrule Public Citizen and Aikens. And those two cases definitively hold that all that is required when you have an informational injury is a denial of information that Congress made public. Congress made this information public. Congress decided that this information was to be available to anyone. And South Carolina's attempt to restrict that and limit that poses an obstacle to Congress's intent. And that is where standing is found in this case. Do you have anything else about this? I would just urge the court to find standing in this case based on the stipulated facts and this court's own decision in Laufer as well as the Supreme Court's decisions in Public Citizen and Aikens. Thank you very much. Mr. Green? Just very briefly, I had a few points there I think all of which are covered in our brief. Um, in no particular Judge Berman, your decision in the Republican case I think there were more specific allegations there going to Article 3 standing than there are here. Um, and frankly it was, it had to deal with voting issues and not a political party that does voting. So I think it was more specific than it is here. It was also a different procedural posture. Different procedural posture, that's true. So, but I think it, I think and even there I was at least I recall I wrote separately suggesting that there was some doubt about the nature of the information there. It seemed a bit ambiguous, generalized, but in the panel's view just enough to get over the hump, at least in my view. Um, so I mean there is a, I think there's, you need something more, but I do want you to respond to Ms. Valdez's point. You know, Congress did create this statute. I think it was intended to maximize disclosure. And it seems almost counterintuitive that a foundation dedicated to this very work, the work of election and election integrity and voter rights is somehow barred from the very information that Congress thought was important for the public to have access to. Do you see the sort of inconsistency there in the way we handle these kinds of cases? Um, there is there's certainly the certainly the courts are struggling with the not entirely clear messages from the Supreme Court that relate to informational standing, Your Honor. I would sort of tie this one into the language in Hippocratic Medicine, which I think you noted also in your concurrence in the Republican Party phase about, you know, organizations don't get standing just because they go around pining on legal issues and courts, excuse me, courts don't respond on legal issues in response to citizens who roam the country in search of governmental wrongdoing. Um, that seems That's a general proposition that I think that's accurate, but in the face of a statute that says you do get to search these records because Congress has spoken and said that they that citizens and or organizations do have access. That's not a, that's not an organization roaming the countryside looking unsolicited for information but someone trying to enforce their rights in federal court and maybe it comes back to Judge Werner's question and that is do they have, is this the forum for the enforcement of that right or is there another forum? Yes. But, Your Honor, I respond to that one way, which is I think their allegations about the harm they've suffered do involve them kind of going around checking up on what the governments do. So, there is something to say that that is what they're trying to do. I would also, and again, I get the tension but I think they do have to show something more than they've showed with what they're going to do with that information to establish an Article 3 injury. Well, in R&C we talked about having to divert funds and in the Phelps complaint they talk about the need to expend additional resources and staff including limiting funding for other pending investigations and programming. In R&C we talk about communicating with registered voters and organizational and voter outreach efforts. I think almost the exact same language is in the complaint here. So, it seems to me that the allegations, at least in the complaint, which is unverified and there are no facts to back it up, but track pretty closely the allegations of the R&C in the R&C case, which was found sufficient to establish standing. Well, I would say a couple things that I think they have alleged sort of legal conclusions about their standing, which is not sufficient, I think, to get them across the threshold, whereas I think the allegations in the Republican case as I read it were a little bit stronger and a little bit more specific, more about what they were going to do and the issues in general, specific. Here, it's just a generalized allegation about they can't get the vote list and they may do something with it sometime, somewhere. And I don't, again, I respectfully submit that's not enough. I think even if you look at public citizen in Aikens, I think those cases and Dreher did interpret them this way, there actually were downstream consequences alleged there. And I would also note in public citizen the judicial disclosure about this was a bigger deal and it actually incorporated that Freedom of Information Act, whereas that's not the case here. We've got a narrow statute within Section 8 which is about the voter list information and no other structure about how that goes. All right. Thank you. I want to thank you and Ms. Valdez for your fine arguments this morning. We'll come down and greet you and move on to our second case.
judges: Albert Diaz, James Andrew Wynn, Nicole G. Berner